**Lorraine SATACK, Relator,**

v.

**STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY (self-insured), Respondent,**

**and**

**Blue Cross and Blue Shield of Minnesota, Intervenor.**

**No. 48453.**

Supreme Court of Minnesota.

Nov. 9, 1978.

Cochrane & Bresnahan, St. Paul, for relator.

Jeffrey Nelson, St. Paul, for respondent.

PETERSON, Justice.

The Workers' Compensation Court of Appeals denied compensation to relator, a

state employee, who was injured when she fell on a public sidewalk close to her place of employment, holding that because her injury did not occur on her employer's premises, she did not sustain an injury arising out of and in the course of employment. Relator seeks review by writ of certiorari. We affirm.

The so-called "premises requirement" is set forth in Minn.St. 176.011, subd. 16, which provides in pertinent part:

> " 'Personal injury' means injury arising out of and in the course of employment * * * but does not cover an employee except while engaged in, on, or about the premises where his services require his presence as part of such services at the time of the injury and during the hours of said service." [1]

Because of the premises requirement, it is generally held that an employee injured in going to or away from his place of employment is not entitled to benefits unless he is engaged in a service for his employer. 1 Larson, Workmen's Compensation Law, § 15.00. There are, however, exceptions permitting recovery in certain circumstances when the employee was not literally on the employment premises when injured. The issue in this case is whether relator comes within any of these exceptions.

The facts upon which the issue turns are undisputed. Employee was a receptionist for the Drivers License Division of the Department of Public Safety and worked in the Transportation Building (formerly Highway Building). This building, one in the Capitol complex, is located in the block bounded on the south by Columbus Avenue and on the west by John Ireland Boulevard.

Although employee was not required to begin work until 8 a. m., she usually arrived 45 minute earlier, so that she could receive a ride from her husband. On February 28, 1978, she got out of his automobile at the northeast corner of the intersection of Co-lumbus Avenue and John Ireland Boulevard, crossed the street and the boulevard between the street and the public sidewalk paralleling the west side of John Ireland Boulevard, and began walking north on that sidewalk to enter the Transportation Building. The east side of the building has two entrances, a main entrance with several doors near the north end of the building and a smaller one with one door near the south end. This entrance is approximately 100 feet from the main public sidewalk, and a small sidewalk runs from the entrance to the main sidewalk. Employee intended to enter the building at the smaller entrance, as was her custom. While walking on the public sidewalk, she slipped on ice approximately 10 or 15 feet south of the walk leading to the smaller entrance and fractured her left ankle. Apparently, the sidewalk on which she fell is owned jointly by the state and the city of St. Paul, but the state removes snow and salts or sands it in the wintertime.

Relator relies upon the exceptional expansion of the employer's premises found in such recent cases as *Goff v. Farmers Union Accounting Services, Inc.,* 308 Minn. 440, 241 N.W.2d 315 (1975), and *Faust v. State, Dept. of Revenue,* 312 Minn. ——, 252 N.W.2d 855 (1977), in both of which an employee injured on a public street was held within the protection of the act. In *Goff* the employees used a parking lot directly across the street from their place of work, which was made available to them through agreement by the employer and the lot owner. The employees, with the employer's knowledge, usually crossed the street directly on leaving the entrance to the employer's building rather than at an intersection some distance away or through an underground tunnel. We held that the route represented a special hazard causally related to employment and that in those circumstances the parking lot constituted

---

1. Although suggesting also that employee was not injured during her hours of service, the state does not press that issue, and it appears that she was within the time requirement of Minn.St. 176.011, subd. 16. She had been injured during a reasonable time before she com-menced work, she had clearly laid aside any "independent ends" at the time, and her supervisors knew her habit of coming to her desk and working before the office opened to the public. See, *Simonson v. Knight,* 174 Minn. 491, 219 N.W. 869 (1928).

part of the employer's premises. In *Faust,* an employee who worked in the Centennial Building, also in the Capitol complex, was injured while crossing the street between that building and the Capitol mall. We held, in a closely divided decision, that the Capitol mall was a part of the employer's premises because state employees, unlike members of the general public, commonly made use of the mall during the summer months as a picnic and recreation area during lunch periods and that the street in which the employee was injured accordingly presented a special hazard of her employment. Both cases exemplify a common exception to the premises requirement under which an injury sustained by an employee while traveling between two parts of his employer's premises is held to arise out of and in the course of his employment. 1 Larson, Workmen's Compensation Law, § 15.14.

We agree with the court of appeals that these cases are distinguishable, both because there was no showing that the employer had knowledge of the employee's route to work and because there was no special hazard annexed to relator's employment in the use of that route. It was a route used by the employee in common with members of the general public and the hazard faced by her of falling on winter ice or snow was not unlike the hazard faced by the general public.

The fact that the worksite was part of what is called the Capitol complex is not itself enough to constitute the entire area as the premises of the employer. The employer's duty of maintenance, to be sure, has been viewed by some courts as a reason to hold that a public sidewalk is a part of the employment premises,[2] although in some of those cases the sidewalks were used almost exclusively by the employees. This is not true of the sidewalks in the Capitol complex, and the state's duty to its employees to maintain the sidewalks is no different from its duty to the public to do so.

The exclusion of public sidewalks from the employer's working premises has been found in several of our cases. In *Sommers v. Schuler Chocolates,* 239 Minn. 180, 58 N.W.2d 194 (1953), a factually similar case, we said (239 Minn. 183, 58 N.W.2d 196):

" * * * [E]mployee fell only after she had passed through what could be considered a route of ingress or egress incident to the employment [a 15-foot private sidewalk]. After she reached the public sidewalk in front of the building, she was in no way bound to follow a route incident or peculiar to her employment. * * * Any public street or sidewalk used by an employee in leaving or arriving at his employment would as well be a part of the working premises as was the site of this accident, and manifestly such a construction is not possible under the statute."

In *Simonson v. Knight,* 174 Minn. 491, 219 N.W. 869 (1928), where a restaurant employee who customarily entered and departed from the back door of the restaurant and across the rear of the lot on which it was located fell into an excavation on that part of the lot while coming to work, we held her route of ingress and egress an incident of her employment and a part of the "working premises" on which the hazards she encountered were referrable to her employment. But we restricted the working premises to the rear of the lot, saying (174 Minn. 493, 219 N.W. 870):

" * * * Relator would not have reached her 'working premises' if she had been on the street in front of the building or in the alley or street in the rear of it."

And in *Johannsen v. Acton Const. Co. Inc.,* 264 Minn. 540, 549, 119 N.W.2d 826, 831, we said:

" * * * It is only reasonable to conclude that an employee is within the protection of the act as long as he is exposed to a hazard causally connected with the employment and peculiar to it. *This does not mean that the protection will continue when he has entered the avenues of*

---

2. E. g., *Reid v. Coastal Abrasive & Tool Co.,* 26 A.D.2d 862, 275 N.Y.S.2d 954 (1966); *Bales v.*

*Service Club No. 1,* 208 Ark. 692, 187 S.W.2d 321 (1945).

*travel where he is exposed to no work-connected hazard or any hazard greater than that to which all others not so employed are exposed."* (Italics supplied.)

We conclude that the controlling principles stated in these cases fully support the determination of the court of appeals.

Affirmed.

YETKA, Justice (dissenting).

Because I find this case, in my opinion, cannot be distinguished from *Goff* and *Faust* cited in the majority opinion, I would reverse.

SCOTT, Justice (dissenting).

I agree with my brother Justice Yetka. This sidewalk area where the employee fell is no less a part of the Capitol Grounds Complex than the grassy mall area in *Faust,* supra.