Filed 5/1/25

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| ZENITH INSURANCE COMPANY, | C101549 |
| Petitioner, | (WCAB Case No. ADJ16567838) |
| v. | |
| WORKERS' COMPENSATION APPEALS BOARD and JAVIER HERNANDEZ, | |
| Respondents. | |

ORIGINAL PROCEEDING; petition for writ of review from a decision of the Workers' Compensation Appeals Board.  Annulled and remanded.

Horvitz & Levy, Jason R. Litt, Bradley S. Pauley; Chernow, Pine and Williams, Darren Wong for Petitioner.

Ellen S. Langille for California Workers' Compensation Institute as Amicus Curiae on behalf of Petitioner.

Department of Industrial Relations, Eric D. Ledger for Respondent Workers' Compensation Appeals Board.

The Law Offices of Arash Khorsandi, Tina Eshghieh, and Michael S. Farr for Respondent Javier Hernandez.

1

This original proceeding concerns application of the so-called "going and coming rule" that generally provides that workers' compensation benefits are not available for an injury sustained during an employee's commute. In this matter, respondent Workers' Compensation Appeals Board (the Board) determined that under both the "special risk" and "dual purpose" exceptions to the going and coming rule, workers' compensation coverage applied to injuries respondent Javier Hernandez sustained while riding home in a vanpool arranged by another employee.

In its petition for writ of review, Petitioner Zenith Insurance Company (Zenith) argues the Board's findings are based on legal error and not supported by substantial evidence. Zenith argues Hernandez's injury is noncompensable because it falls within the scope of the going and coming rule and the exceptions relied upon by the Board do not apply to the facts before us.

Because we agree with Zenith that the exceptions relied upon by the Board do not apply, we annul the Board's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Zenith does not dispute the underlying facts found in this case, but rather the legal conclusions the Board drew from the factual findings that were made.

At the time of the accident, Hernandez was employed as a farm laborer by Ceja Reyes, Inc., a farm labor contractor located in Woodland. Ceja Reyes provides agricultural workers to businesses that need them. During his employment with Ceja Reyes, Hernandez was only assigned to work at one site in Winters, which was approximately 60 miles from his home in Yuba City.

Ceja Reyes does not provide transportation to its employees. Its employment contract with Hernandez specified that it did not make transportation arrangements, did not recommend any type of transportation, and Hernandez was solely responsible for his transportation.

Hernandez testified that he does not have a driver's license, does not own a car, and does not drive. He said there was no "reasonable public transportation" that would have taken him from his home to the jobsite.

Another Ceja Reyes employee arranged the vanpool that Hernandez used to travel to and from work as a personal side business independent of their employer. To motivate workers to use the vanpool, the vanpool operator held himself out as a supervisor for Ceja Reyes, even though he was not one. Hernandez paid $10 per day to use the van. The ride from the work site in Winters to his home in Yuba City took about an hour. Hernandez's actual supervisor at the work site told workers that the van owner was in charge of them when they were "using the van." The supervisor also observed the workers being delivered to the job site, and once he saw they arrived, he assigned each worker his duties.[1]

In May 2022, during Hernandez's commute home, the van crashed in Yolo County. At the time, the van was being driven by the son of the organizer of the vanpool. This driver did not have a California driver's license, and the van was not certified to be used as a farm labor vehicle.[2] There were 10 or 11 other people in the van with Hernandez.

At the time of the injury, Ceja Reyes was insured for workers' compensation by Zenith.

Hernandez filed a workers' compensation claim with the Board. He alleged that he sustained catastrophic injuries during the accident, including a right leg amputation.

---

[1] Of 40 or more farm workers who worked at the jobsite, up to about half utilized this vanpool.

[2] "A 'farm labor vehicle' is any motor vehicle designed, used, or maintained for the transportation of nine or more farmworkers, in addition to the driver, to or from a place of employment or employment-related activities." (Veh. Code, § 322, subd. (a).)

Zenith denied the claim on the ground the injuries were not sustained in the course and scope of his employment under the going and coming rule.

A workers' compensation judge heard the issue of whether the claim was barred by the going and coming rule, and that issue was tried in March 2024. Hernandez argued his claim was not barred by the going and coming rule because the "employer-controlled transportation" or "benefit to the employer" exceptions applied. In contrast to the arguments advanced by Hernandez, the judge concluded Hernandez's claims came within the special risk and dual purpose exceptions to the going and coming rule.

Zenith filed a petition for reconsideration.

The workers' compensation judge issued a report and recommendation to deny the petition.

The Board denied the petition and adopted the workers' compensation judge's report.

Zenith filed a timely petition for writ of review in this court. (Lab. Code, § 5950.) Hernandez filed an answer, and Zenith filed a reply. We issued a writ of review.

## II. DISCUSSION

### A. *Standard of Review*

Our review, though limited, includes determining whether the Board's decision is supported by substantial evidence and whether the findings of fact support the decision. (Lab. Code, § 5952, subds. (d), (e).) "Where the award rests on an erroneous interpretation of law it will be annulled." (*Barns v. Workers' Comp. Appeals Bd*. (1989) 216 Cal.App.3d 524, 530.)

Where, as here, the relevant facts are not in real dispute, the applicability of the going and coming rule is a question of law and a purported finding of fact on that issue is not binding on this court. (*Santa Rosa Junior College v. Workers' Comp. Appeals Bd*. (1985) 40 Cal.3d 345, 351; *State Lottery Com. v. Workers' Comp. Appeals Bd*. (1996) 50

4

Cal.App.4th 311, 315; *Bramall v. Workers' Comp. Appeals Bd*. (1978) 78 Cal.App.3d 151, 155.)

B.      *Going and Coming Rule*

To receive workers' compensation, an injured employee must prove by a preponderance of the evidence that the injury is one "arising out of and in the course of the employment." (Lab. Code, § 3600, subd. (a); *3 Stonedeggs, Inc. v. Workers' Comp. Appeals Bd.* (2024) 101 Cal.App.5th 1136, 1150.) "The going and coming rule is among the judicially created doctrines that define that statutory requirement. [Citations.] The rule provides that an injury suffered 'during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances' is not within the course of employment. As such, it is not compensable." (*Price v. Workers' Comp. Appeals Bd*. (1984) 37 Cal.3d 559, 564-565.)

"The rule has . . . been explained on the theory that 'ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work.'" (*Santa Rosa Junior College v. Workers' Comp. Appeals Bd., supra*, 40 Cal.3d at p. 352.) "The decisions have thereby excluded the ordinary, local commute that marks the daily transit of the mass of workers to and from their jobs; the employment, there, plays no special role in the requisites of portage except the normal need of the presence of the person for the performance of the work. [¶] On the other hand, many situations do not involve local commutes enroute to fixed places of business at fixed hours. These are the extraordinary transits that vary from the norm because the employer requires a special, different transit, means of transit, or use of a car, for some particular reason of his own. When the employer gains that kind of a particular advantage, the job does more than call for routine transport to it; it plays a different role, bestowing a special benefit upon the employer by reason of the extraordinary circumstances. The employer's special request, his imposition of an unusual condition, removes the transit from the employee's choice or convenience and places it within the

5

ambit of the employer's choice or convenience, restoring the employer-employee relationship." (*Hinojosa v. Workmen's Comp. Appeals Bd*. (1972) 8 Cal.3d 150, 157.) These exceptions were the focus of Hernandez's briefing before the workers' compensation judge but not in this original proceeding because they were not the basis for the Board's ruling. The Board's conclusion that the going and coming rule did not apply was based entirely on its determination that both the special risk and dual purpose exceptions to the going and coming rule apply. We turn now to the applicability of those exceptions.

### 1. Special Risk Exception

"Problems in applying the [going and coming] rule occur chiefly in borderline cases where the employee is injured in close proximity to the employer's premises just before or after the workday." (*Parks v. Workers' Comp. Appeals Bd*. (1983) 33 Cal.3d 585, 589.) The special risk exception addresses these situations. (*Ibid*.) Our Supreme Court has explained "the 'special risk' exception to the going and coming rule provides for compensation where a risk associated with the employment causes injury *just outside the employer's premises*." (*Price v. Workers' Comp. Appeals Bd*., *supra*, 37 Cal.3d at p. 566, italics added; see also 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2024) ch. 4, Special Risk Exception § 4.156[1], p. 4-201 ["If a condition on or off the employer's premises creates a special risk of harm to an employee about to enter or who has just left the premises, the injury is within the course of employment" (fns. omitted)].) For instance, in two cases cited by the Board, "the employees were injured in accidents while making left turns on a public street to the employers' premises in the face of oncoming traffic." (*General Ins. Co. v. Workers' Comp. Appeals Bd*. (1976) 16 Cal.3d 595, 600; see *Greydanus v. Industrial Acc. Com*. (1965) 63 Cal.2d 490; *Pacific Indem. Co. v. Industrial Acc. Com. (Henslick)* (1946) 28 Cal.2d 329.) "More broadly stated, the special risk exception implies 'a *zone of employment*, varying in distance, measured by the special circumstances of each case and

6

defined by the nature of the employment.' " (*Price, supra*, at p. 566.) In this context, our Supreme Court has explained that " '[t]he fact[] that an accident happens upon a public road and that the danger is one to which the general public is likewise exposed . . . [does] not preclude the existence of a causal relationship between the accident and the employment if the danger is one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.' " (*Parks, supra*, at p. 590; accord *Freire v. Matson Nav. Co*. (1941) 19 Cal.2d 8, 12.) "Synthesizing concepts," our Supreme Court "devised a two prong test to determine applicability of the special risk exception. . . . [T]he exception will apply (1) if 'but for' the employment the employee would not have been at the location where the injury occurred and (2) if 'the risk is distinctive in nature or quantitatively greater than risks common to the public.' " (*Parks, supra*, at p. 590.)

The Board applied the two-prong test but neither the Board nor Hernandez supply any authority for rendering the zone of employment exception as large as an entire commute. (See 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, ch. 4, Special Risk Exception § 4.156[2], pp. 4-202 to 4-203 ["Generally the injury must be sustained in the immediate vicinity of the employer's premises"].) "In determining whether the going and coming rule bars compensation in a particular case, the courts must abide by the mandate of Labor Code section 3202, which provides that the [Workmen's Compensation] Act 'shall be liberally construed' to protect the injured. Any doubts as to the rule's application are to be resolved in favor of coverage." (*Price v. Workers' Comp. Appeals Bd., supra*, 37 Cal.3d at p. 565, fn. omitted.) Here, however, we have no doubts because our Supreme Court has explained that the special risk exception only applies to situations just outside the employment premises and the facts of this case do not comport with that requirement. (*Id*. at p. 566.)

Even if we were to ignore the location of the injury, we would still disagree with the Board's analysis and conclude the special risk exception does not address the type of

risk at issue here. Zenith, but not the Board or Hernandez, cites authority in the respondeat superior context that uses this two-prong test for applying the "special risk" exception where " ' "an employee endangers others with a risk arising from or related to work." ' " (*Feltham v. Universal Protection Service, LP* (2022) 76 Cal.App.5th 1062, 1069.) "Respondeat superior liability under the special risk exception ' "is properly applied where an employee undertakes activities within his or her scope of employment that cause the employee to become an instrumentality of danger to others even where the danger may manifest itself at *times and locations remote from the ordinary workplace*." ' [Citations.] Where the risk of injury is created by the enterprise, within the scope of the employee's employment, and it proximately causes the injury, the cost of injury is imposed upon the enterprise." (*Lynn v. Tatitlek Support Services, Inc*. (2017) 8 Cal.App.5th 1096, 1113.) "[T]he going and coming rule applied in tort law to determine the scope of employment is not identical to the rule applied in workers' compensation law to determine the course of employment," though it is "closely related." (*Pierson v. Helmerich & Payne Internat. Drilling Co*. (2016) 4 Cal.App.5th 608, 619.) "The differences exist because the policy considerations underlying each field of law are different." (*Ibid*.) Regardless, under any version of the special risk exception, there must be a relationship between the risk to which the employee was subjected and the location of the employer's premises and/or conditions over which the employer exercised some control. (See *Johnson v. Stratlaw, Inc*. (1990) 224 Cal.App.3d 1156, 1164 ["Here, however, plaintiffs' own pleadings allege it was defendant's employment practices with respect to [decedent] that created the risk of injury]; *Rivera v. Workers' Comp. Appeals Bd*. (1977) 70 Cal.App.3d 705, 708, 709 [noting in other cases "the risk to which the employee was subjected was related to and grew out of the location of the employer's premises and conditions over which the employer exercised some control" and concluding "[a]n employer's liability under the workers' compensation law cannot turn on the directions or policies of the employee's union"]; see also *Feltham v. Universal*

*Protection Service, LP, supra*, at pp. 1070-1071 [neither the nature of the job nor the schedule created a special risk]; *Depew v. Crocodile Enterprises, Inc*. (1998) 63 Cal.App.4th 480, 488-490.) Here there was no relationship between the risk and the location of the premises or conditions over which the Board found the employer had control.

The Board determined "[Ceja Reyes]'s decision to hire a worker that had no way to get to work on his own required him to make special arrangements for a van[]pool that by its very nature exposed him to a particular risk, distinctive in nature, not shared by the general public."[3] The Board concluded Hernandez was required to be on the road longer, for more miles, and on a different route and was riding in a van that was not legally registered as a farm labor vehicle, and driven by a person, on the day of the accident, who did not possess a valid driver's license. "All these were unique and special risks created by [Ceja Reyes] in hiring a person who could not drive, had no car, and had no driver's license, and who needed to reliably be at work on time sixty miles away from his home." On appeal, Hernandez argues the general public would not be involved in this type of transportation or recruited to be in it. These arguments, to the extent they deviate from the normal risks of commuting to the general public, are based on the nature of the *employee*, as a person who is not licensed to drive, and not any circumstances of the employment over which the Board properly found the employer had any knowledge or control.

---

[3] The Board stated that the commute was not "local" because it was 60 miles one way. This finding appears to go to whether the going and coming rule applies in the first instance and not whether the special risk exception applies. Regardless, the suggestion that a commute of 60 miles is not a local commute appears to be unsupported. (See *Lantz v. Workers' Comp. Appeals Bd*. (2014) 226 Cal.App.4th 298, 306 [affirming Board decision that stated a one-way commute of more than 85 miles "while significant, constituted the ordinary, local commute that marked Lantz's transit to and from work"].)

There is no support in the record for the suggestion that Ceja Reyes was aware Hernandez could not drive.[4] "An award of compensation may not be based on surmise, conjecture, or speculation." (*3 Stonedeggs, Inc. v. Workers' Comp. Appeals Bd., supra*, 101 Cal.App.5th at p. 1149.) While there was some evidence to support the Board's finding that the employer was aware of the vanpool, there is no indication the employer was aware of the license status of the drivers of the vanpool, and no evidence was apparently introduced that carpools and vanpools themselves are risky. The going and coming rule has been applied to employees who make their own carpooling or ridesharing arrangements. (*Pierson v. Helmerich & Payne Internat. Drilling Co., supra*, 4 Cal.App.5th at p. 612; *Anderson v. Pacific Gas & Electric Co.* (1993) 14 Cal.App.4th 254, 262.)[5] The Board's logic stretches the special risk exception far beyond prior case law and creates an exception that could apparently apply any time an employer hires a person without a driver's license or a car. We agree with Zenith that the Board erred in applying the special risk exception to these facts.

2.     *Dual Purpose Exception*

Zenith argues that, contrary to the Board's conclusion, the dual purpose exception to the going and coming rule does not apply. Again, the facts of this case do not meet threshold requirements in the authority upon which the Board (and Hernandez in this court) relies: "In proper circumstances, the dual purpose exception applies to a local commute to and from the place of employment *when the employee performs work at home*." (*Bramall v. Workers' Comp. Appeals Bd., supra*, 78 Cal.App.3d at p. 156, emphasis added.) "The basic question to be answered in a particular case is whether 'the

---

[4] Perhaps because the record suggests Hernandez never argued any special risk exception applied here.

[5] These cases involve the going and coming rule in tort law to determine the scope of employment for purposes of respondeat superior liability.

trip involves an incidental benefit to the employer, not common to commute trips by ordinary members of the work force.' [Citations.] However, mere performance of 'some tidbit of work' at home will not avoid the 'going and coming' rule because that would be tantamount to a complete abandonment of the 'going and coming' rule. [Citations.] It seems equally clear that the benefit to the employer must be one conferred in furtherance of an express or implied term or condition of the contract of employment." (*Id*. at pp. 157-158.)

Here, the Board found the trip home served a dual purpose because Ceja Reyes is in the business of reliably providing agricultural laborers to businesses that need them, and the manager was aware of the vanpool and the arrival of the employees at the same time allowed him to assign them their work duties all at once. These facts are not sufficient to apply the dual purpose exception. They also do not go beyond the "normal need of the presence of the person for the performance of the work." (*Hinojosa v. Workmen's Comp. Appeals Bd., supra*, 8 Cal.3d at p. 157.)

Hernandez essentially argues he performed work while on the van. He argues Zenith failed to accept the Board's finding of fact that workers would receive their job assignments for the day while they were physically *in* the van. The Board made no such finding. Rather, it explained that "[Hernandez]'s supervisor . . . observed the workers being delivered to the work site, and once he saw that they had arrived, assigned each worker his duties." The remainder of Hernandez's argument cites the fact that the Board found that "[Hernandez]'s actual supervisor. . . told the workers that the van owner was in charge of them when they were using the van." This ambiguous statement does not support the notion that they performed work on the van or at home. The Board erred in applying the dual purpose exception to these facts.

11

### III.  DISPOSITION

The order of the Workers' Compensation Appeals Board entered on May 29, 2024, is annulled, and the matter is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.[6]


/S/

_____

RENNER, J.


We concur:


/S/

_____

EARL, P. J.


/S/

_____

DUARTE, J.

---

[6] Accordingly, we reject Hernandez's argument he is entitled to fees and costs under Labor Code section 5801.